IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Daylene Russell, ) ) Plaintiff, ) ) vs. ) ) Kilolo Kijakazi¹, Acting Commissioner ) of Social Security, ) ) Defendant. ) ) _____) | Civil Action No. 5:20-cv-1806-TMC **ORDER** |

Plaintiff Daylene Russell ("Plaintiff" or "Russell") brought this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security ("Commissioner"), denying her claim for Disability Insurance Benefits ("DIB") under the Social Security Act ("SSA" or the "Act"). (ECF No. 1). In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(a), D.S.C., this matter was referred to a magistrate judge for pretrial handling. Before the court is the magistrate judge's Report and Recommendation ("Report"), recommending that the Commissioner's decision be affirmed. (ECF No. 14). Russell filed objections to the Report, (ECF No. 18), and the Commissioner replied, (ECF No. 21). Accordingly, this matter is now ripe for review.

**I. Background**

A. Agency Decision

Russell worked as a stocker at Walmart from 2001 until February 1, 2011, when she stopped working due to numerous alleged conditions: depression, anxiety, panic disorders, lower

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit.

1

back pain, comprehension problems, weight gain, restlessness, and headaches. (ECF No. 8-1 at 190–95). Russell was 47 at the time of the onset of these conditions. In July 2012, Russell applied for DIB. *Id*. at 53. An administrative law judge ("ALJ") issued a decision on May 21, 2014, in which she determined that Russell suffered from several severe impairments, including "degenerative disk disease, status post fusion; status post left temporal lobectomy; obesity; borderline intellectual functioning; affective disorder; anxiety disorder; personality disorder; and cognitive disorder." *Id*. at 55. Ultimately, the ALJ determined Russell not to be disabled from February 1, 2011, through May 21, 2014, finding that, in light of Russell's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Russell could perform. *Id*. at 62–63.

On June 23, 2017, Russell filed the instant application for DIB, initially alleging she became unable to work on February 1, 2011. *Id*. at 163–66. Her claim was denied at the initial stage on September 20, 2017, *id*. at 69–76, and upon reconsideration on January 23, 2018, *id*. at 78–87. Russell requested a review by an ALJ, *id*. at 99–102, and a hearing was held before an ALJ on December 13, 2018, *id*. at 35–49. At the hearing, Russell, then 53 years old, amended the alleged onset date to December 31, 2016. *Id*. at 41.[2] Russell testified that she had a high school diploma and had worked as a stocker for Walmart from 2001 until February 1, 2011, which required her to lift 50 pounds. *Id*. at 39–40. She testified she stopped working in 2011 because she suffered from a bulging disc which required surgery. *Id*. at 40. Russell indicated that after her surgery she developed numerous conditions that prevented her from working, including anxiety, panic attacks, and falling spells. *Id.* at 40–41. In her disability report, Russell also included

---

[2] Counsel for Russell indicated at the hearing that she wished to amend the onset date in response to the ALJ's comment that she did not see any mental health records "from the time of your last decision in 2014 until the end of [2016]." (ECF No. 8-1 at 41).

depression, lower back pain, weight gain, restlessness, headaches, and a lack of comprehension as conditions that prevented her from working. *Id*. at 190. Russell testified that she was taking Xanax in 2016 for her anxiety and panic disorders. *Id*. at 41. Russell indicated that, at the time of the hearing, she had a driver's license and did her own grocery shopping and cooking, and performed housework including laundry, dishes, vacuuming, and paying bills. *Id*. at 42. However, there were some days, according to Russell, where she could not do anything and was forced to lie down. *Id*. Russell testified that she does not use any assistive devices to move or perform these activities. *Id*. Russell stated that her only source of income was from family inheritance. *Id*. at 38.

The ALJ asked a vocational expert ("VE") to review the record and testify at the hearing. The VE testified that, based on Russell's past work experience, age, education—assuming that she could only do light work and have only occasional superficial interaction with the public—there would be three jobs that existed in significant numbers in the national economy that Russell could perform: inspector and hand packager; dry cleaner; and stock checker. *Id*. at 45–46. The VE conceded that there would be no work Russell could perform if it were assumed that (1) she had to lie down for an hour at unpredictable times two or three days each workweek; or (2) she experienced marked or frequent difficulty with memory, focus, or planning. *Id*. at 47.

On March 28, 2019, the ALJ denied Russell's claim, finding her not disabled under the SSA. *Id*. at 24–29. Applying the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a)(4),[3] the ALJ determined at the first step that Russell "did not engage in substantial gainful activity during the period from her alleged onset date of December 31, 2016, through her

---

[3] *See Halperin v. Saul*, 855 Fed. App'x 114, 115 (4th Cir. 2021) ("Regulations promulgated by the Social Security Administration establish a "five-step sequential evaluation process" that ALJs must follow when determining whether a claimant is disabled within the meaning of the Social Security Act and its regulations.").

3

date last insured of December 31, 2016." *Id.* at 26. Proceeding to the second step, the ALJ found that Russell suffered two medically determinable impairments: non-intractable post-traumatic headaches and non-intractable seizure disorder. *Id*. The ALJ determined, however, that "[t]hrough the date last insured," December 31, 2016, Russell "did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months" and, "therefore, . . . did not have a severe impairment or combination of impairments." *Id*. Although the ALJ found that the symptoms allegedly preventing Russell from working—depression, anxiety, panic disorder, lower back pain, weight gain, restlessness, headaches and difficulty with comprehension—could reasonably have been produced by her medically determinable impairments, the ALJ concluded that Russell's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id*. at 27. Specifically, the ALJ indicated that Dr. Sandoz's treatment notes provided evidence that Russell was suffering from both impairments around December 31, 2016, her one-day adjudication period, but also indicated these conditions had improved by April 2018. *Id*. at 28, 397. According to the ALJ, the record reflected that Russell's impairments had "either been successfully treated, controlled, stabilized, or otherwise" only "minimally affect[ed] [Russell's] ability to perform basic work activities." *Id*. at 28. With respect to the alleged symptoms produced by Russell's impairments, the ALJ noted that the record contained no evidence that Russell reported having fallen during the period of adjudication or that Russell had been diagnosed with anxiety or panic attacks on December 31, 2016. *Id*.

The ALJ also considered the medical opinion evidence in the record, including a January 2013 letter to counsel from Dr. Harrah, one of Russell's primary care physicians, stating that Russell's unspecified "comorbidities" affected her ability to maintain concentration, stand on her

4

feet for extended periods, perform complex tasks requiring coordination, and that, therefore, Russell could not "maintain gainful employment." *Id*. at 28, 387. The ALJ did not find this statement to be persuasive, however, because it was made four years prior to the alleged onset date; it was not based on an assessment of "specific impairments with their limitations;" it was not supported by the "sparse treatment notes" related to the adjudicated period; and it constituted an "opinion on an issue reserved to the Commissioner." *Id*. at 28.

The ALJ then considered an April 10, 2018 statement from Dr. Sandoz, Russell's neurologist, indicating that following a surgery to her left temporal lobe in 1988, she had problems with focus and memory. *Id*. at 28, 391. Dr. Sandoz noted he was treating Russell's deficit with Adderall[4] and opined that Russell "continues to have issues with memory, difficulty focusing, difficulty planning, and the ability to perform at the level that she used to." *Id*. at 391. The ALJ did not find Dr. Sandoz's statement to be persuasive, concluding his assessment was vague and "remote from the claimant's adjudicated period[,]" and that there were "no records showing medically determinable mental health impairments during [the adjudicated] period." *Id*. at 28.

Finally, the ALJ considered the prior decision denying benefits to Russell in May 2014. *Id*. at 28–29. The ALJ found the prior decision "less than persuasive," explaining that "[t]he findings made [in the May 2014 decision] are not supported by the claimant's treatment notes from the current adjudicated period as the claimant's alleged impairments have changed considerably during the two years since [the May 2014 decision] and the limited record does not support finding medically determinable mental health impairments as found in [May 2014]." *Id*. at 29.

---

[4] Russell testified at the hearing that she was subsequently prescribed Ritalin instead of Adderall. (ECF No. 8-1 at 44).

Therefore, the ALJ concluded Russell did not have an impairment or combination of impairments that significantly limited her ability to perform basic work activities during the adjudication period and, as a result, "was not under a disability, as defined in the Social Security Act, at any time from December 31, 2016, the alleged onset date, through December 31, 2016, the date last insured." *Id*. On March 26, 2020, the Appeals Council declined Russell's request for review, thereby making the ALJ's decision the final decision of the Commissioner. *Id*. at 5.

### B. Review by the Magistrate Judge

Russell filed this action for judicial review on May 8, 2020. (ECF No. 1). On June 11, 2021, the magistrate judge issued the Report recommending the court affirm the Commissioner's decision. (ECF No. 14). In the Report, the magistrate judge sets forth, without objection from the parties, the relevant facts and legal standards, which are incorporated herein by reference. *Id*. at 7–10. In concluding that the Commissioner's decision was supported by substantial evidence and was not reached through the application of an incorrect legal standard, the magistrate judge rejected Russell's contention that the ALJ erred in failing to proceed beyond the second step of the five-step sequential process because there was "record evidence . . . that [her] impairments were more than slight." *Id*. at 10 (quoting ECF No. 11). Step two of the sequential process calls for the ALJ to make a determination whether the claimant has a medically determinable impairment or combination of impairments that is "severe" as defined by 20 C.F.R. § 404.1520(a)(4)(ii). *See Triplett v. Saul*, No. 19-2415, 2021 WL 2580589, at *2 (4th Cir. June 23, 2021) ("Step two asks whether the claimant's medically determinable impairments meet the regulations' severity and duration requirements."). A medically determinable impairment "'is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities.'" (ECF

6

No. 14 at 11 (quoting 20 C.F.R. § 404.1522(a))).[5] And, as correctly noted by the magistrate judge, if the claimant does not have a severe impairment or combination of impairments, then the Commissioner must enter a finding that the claimant is not disabled and need not continue further through the remaining steps. *Id*. at 11; *see also* 20 C.F.R. § 404.1520(c) ("If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience."); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (explaining that when "the process ends at step two, the burden of proof never shifts to the Secretary"); *Arakas v. Comm'r, Soc. Sec. Admin*., 983 F.3d 83, 90 (4th Cir. 2020) ("[I]f the claimant's impairments do not meet the severity and duration requirements, the ALJ must find the claimant not disabled. Otherwise, the ALJ proceeds to step 3 . . . ." (citations omitted)).

The magistrate judge determined that the only evidence cited by the ALJ in support of the finding that Russell suffered from medically determinable impairments during the adjudicated period consists of the September 2016 treatment notes of Dr. Sandoz that diagnosed Russell with

---

[5] The regulations define "basic work activities" to mean "the abilities and aptitudes necessary to do most jobs" including:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1522(b).

non-intractable post-traumatic headaches—but noted it had improved—and non-intractable seizure disorder—but indicated Russell had done well following surgery. (ECF No. 14 at 12) (citing ECF No. 8-1 at 27–28); *see also* (ECF No. 8-1 at 402). The magistrate judge noted the evidence also reflected that Russell followed up with Dr. Sandoz on April 10, 2018, and that the treatment notes provided as follows:

> Assessment/Plan
> 1. Seizure disorder
> Posttraumatic in nature, at this moment secondary to the finding the patient is having will continue with topiramate 50 mg twice a day see response consideration to increase the dose to 100 mg twice a day will be give.
> Epileptic seizures related to external causes, not intractable, without status epilepticus . . .
>
> 2. Post-traumatic headache
> Improved utilizing ibuprofen at this moment no further treatment will be indicated. Chronic post-traumatic headache, not intractable . . .
>
> 3. Psychomotor retardation
> Etiology of this moment appears to be his [sic] associate with a posttraumatic injury possible associate with posttraumatic stress disorder causing difficulty with focusing and psychomotor retardation at this moment. Adderall might have been beneficial but he [sic] has noted that it was more increase on find the case of this month and being smothered at night see response to Ritalin if there is any improvement will continue with current management and if not, we will switch to Aricept, due to persistent a funny taste sensation located in the mouth consideration to increasing the dose of topiramate to 100 mg twice a day might be another option. She will call within 2-3 weeks and see response to therapy.

(ECF No. 14 at 13 (quoting ECF No. 8-1 at 395–96)).

The magistrate judge rejected Russell's contention that these April 2018 treatment notes showed that her impairments "'were severe and precluded employment.'" *Id*. (quoting ECF No. 9 at 13). The magistrate judge explained that Dr. Sandoz's notes do not show that in April 2018 he "assessed the severity of [Russell's] impairments" or "addressed [Russell's] employability," *id*.,

8

and agreed with the ALJ's conclusion that the record "shows that [Russell's] conditions have either been successfully treated, controlled, stabilized, or otherwise do not more than minimally affect [Russell's] ability to perform basic work activities and are not severe," *id*. at 14 (internal quotation marks omitted).

Finally, the magistrate judge likewise rejected Russell's argument that the prior ALJ decision in 2014 provide evidence that her impairments are severe. *Id*. Specifically, Russell argued the 2014 decision determined that her impairments were severe and that there was no evidence in the record suggesting her impairments had improved between the issuance of the prior decision and December 31, 2016, the date last insured. (ECF No. 9 at 13). In Russell's view, therefore, the 2014 administrative decision provided sufficient evidence to satisfy the severity requirement at step two of the sequential process and required the ALJ in the instant case to continue to subsequent steps in the disability evaluation process. The magistrate judge found substantial evidence to support the ALJ's conclusion that the prior 2014 decision was "less than persuasive" because Russell's "alleged impairments have changed considerably during the two years since [the 2014] decision and the limited record does not support finding medically determinable mental health impairments as found in [the 2014] decision." (ECF No. 14 at 15 (internal quotation marks omitted)).

Accordingly, the magistrate judge concluded that, because Russell "provided no evidence that she had an impairment that significantly limited her ability to do basic work activities during the adjudicated period," the ALJ's "finding that [Russell] did not have any severe impairments prior to her date last insured is supported by substantial evidence." *Id*. at 15–16.

## II. Standards of Review

### A. Judicial Review of the Commissioner's Decisions

The federal judiciary has a limited role in the administrative scheme established by the SSA. Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined . . . as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). Thus, in its review, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] own judgment for that of the [Commissioner]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).

However, "[f]rom this it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Rather, "the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational." *Vitek*, 438 F.2d at 1157–58.

B. District Court Review of the Magistrate Judge's Report

The purpose of magistrate review is to conserve judicial resources. *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007). Thus, although the recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter, *see Wimmer v. Cook*, 774 F.2d 68, 72 (4th Cir. 1985) (quoting *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976)), the court is charged with making a *de novo* determination of only those portions of the Report to which a specific objection is made. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of

the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the proposed findings and recommendations." (emphasis added)). On the other hand, the court need only review for clear error "those portions which are not objected to—including those portions to which only 'general and conclusory' objections have been made[.]" *Dunlap v. TM Trucking of the Carolinas, LLC*, 288 F. Supp. 3d 654, 662 (D.S.C. 2017). Thus, "[a] party's objection to a magistrate judge's report must be 'specific and particularized' in order to facilitate review by a district court." *Midgette*, 478 F.3d at 621.

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap*, 288 F. Supp. 3d at 662 n.6 (quoting *United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, & Contents, Known As: 2121 E. 30th St., Tulsa, Okla.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). Similarly, objections which merely restate arguments already presented to and ruled on by the magistrate judge or the court do not constitute specific objections. *See, e.g.*, *Frazier v. Wal-Mart*, C.A. No. 6:11-1434-MGL, 2012 WL 5381201, at *1 (D.S.C. Oct. 31, 2012) (noting that "almost verbatim restatements of the arguments made in previously ruled upon discovery motions" are not specific objections); *Ashworth v. Cartledge*, Civ. A. No. 6:11-cv-01472-JMC, 2012 WL 931084, at *1 (D.S.C. March 19, 2012) (noting that objections which were "merely almost verbatim restatements of arguments made in his response in opposition to Respondent's Motion for Summary Judgment . . . do not alert the court to matters which were erroneously considered by the

11

Magistrate Judge"). Thus, a *de novo* review is wholly unnecessary for a district court to undertake when a party seeks to rehash general arguments that were already addressed in a magistrate judge's report. *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982); *see also Dandy v. Berryhill*, 6:17-cv-331-BHH, 2018 WL 4610757 (D.S.C. Sept. 26, 2018); *Butler v. Berryhill*, No. 4:16-cv-03209-JMC, 2018 WL 1556188, at *1 n.3 (D.S.C. Mar. 30, 2018) ("The court does not need to conduct a de novo review of objections presented in the form of '[complete statements] of arguments already made . . . as these objections never cite specific conclusions of the [report] that are erroneous.'" (quoting *Smith v. City of N. Charleston*, 401 F. Supp. 2d 530, 533 (D.S.C. 2005)). Furthermore, in the absence of specific objections to the Report, the court is not required to give any explanation for adopting the magistrate judge's recommendation. *Greenspan v. Brothers Prop. Corp.*, 103 F. Supp. 3d 734, 737 (D.S.C. 2015) (citing *Camby v. Davis*, 718 F.2d 198, 199–200 (4th Cir. 1983)).

### III. Discussion

In her objections to the Report, Russell appears to have three primary complaints. (ECF No. 18). First, Russell objects, *id*. at 2–3, to the magistrate judge's conclusion that substantial evidence supports the ALJ's assessment that the sparse treatment notes in the record showed that Russell's impairments had been "'successfully treated, controlled, stabilized, or otherwise [did] not more than minimally affect [her] ability to perform basic work activities,'" (ECF No. 14 at 14 (quoting ECF No. 8-1 at 28)). More particularly, Russell argues that Dr. Sandoz's treatment notes "do not show that Russell's impairments posed *no* restriction on her ability to work," pointing out that his September 2016 entry reflected that Russell "report[ed] 11 to 15 headaches a month despite treatment" and that Dr. Sandoz observed "a decreased range of motion in her cervical spine and pain with extension of her low back." (ECF No. 18 at 2–3 (emphasis added)). Russell's objection,

12

however, incorrectly implies that in order to satisfy the severity requirement, she need only establish that her medically determinable impairment restricts her ability to work in any way, no matter how slight. For an impairment to be severe, the regulations require that it "*significantly limit*" her "ability to do basic work activities." 20 C.F.R. § 404.1522(a) (emphasis added). And, as the magistrate judge concluded, substantial evidence supports the ALJ's finding that Russell failed to demonstrate "that she had an impairment that significantly limited her ability to do basic work activities during the adjudicated period." (ECF No. 14 at 15). The record reflects that Russell consulted Dr. Sandoz on June 15, 2016, and she reported having headaches 11 to 15 days per month and described the pain level as a three on a scale of 10. (ECF No. 8-1 at 343). Dr. Sandoz prescribed an anti-inflammatory pain reliever and ordered an MRI of her brain. *Id*. The results of the MRI showed the prior left temporal resection but noted no abnormal enhancement or acute abnormality. *Id.* at 347. Russell returned on July 15, 2016, for a follow-up appointment with Dr. Sandoz, reporting the same headache symptoms but no muscle aches. *Id*. at 341. Dr. Sandoz noted her mental status and neurological functions were normal and diagnosed her with posttraumatic headache symptoms. *Id*. He noted Russell's lower back had a decreased range of motion to an unspecified extent and that there was "pain w/ extension." *Id*. During Russell's next appointment on September 13, 2006, however, Dr. Sandoz determined that her headache symptoms had improved since July and stressed the need for continued compliance with the prescribed medications. *Id*. at 339. Dr. Sandoz noted the same unspecific decrease in range of motion and did not assess any impairment involving Russell's lower back. *Id*. The record contains no further documentation or treatment notes between September 2016 and December 31, 2016. In April 2018, Dr. Sandoz performed an annual examination at which point he diagnosed Russell with post-traumatic headaches, noting "this is controlled utilizing diclofenac, she is also helping to prevent

utilizing topiramate stress compliant with the therapy new prescription given." *Id*. at 398. There is, therefore, substantial evidence—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971)—in the record to support the ALJ's determination that her post-traumatic headaches have been successfully treated and controlled and do not substantially affect her ability to perform basic work activities. Russell's first objection provides no basis for rejecting the recommendation of the magistrate judge, and the court overrules it.

Next, Russell objects to the magistrate judge's determination that Dr. Sandoz's April 2018 office notes do not reflect an assessment of the severity of Russell's impairments or address the affect of such impairments on her employability. (ECF Nos. 18 at 4; 14 at 13). Russell points to the contemporaneous April 2018 opinion letter issued by Dr. Sandoz which stated "that Russell 'continues to have issues with memory, difficulty focusing, difficulty planning, and the ability to perform at the level that she used to.'" (ECF No. 18 at 4 (quoting ECF No. 8-1 at 391)). As noted in the Report, however, this evidence does not compel a finding that Russell's impairments were severe: "The ALJ found 'Dr. Sandoz's assessment vague and his opinion remote from the claimant's adjudicated period.'" (ECF No. 14 at 13 n.6 (quoting ECF No. 8-1 at 28)). The magistrate judge further noted that this opinion letter indicated that "since [Russell's] resection of the left temporal lobe in 1988 she has been having difficulty with memory focusing" and that "due to the deficit she takes Adderall." *Id*. (internal quotation marks omitted). Nowhere in Dr. Sandoz's opinion letter does it indicate how Russell's conditions limit "basic work activities" including physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-

14

workers and usual work situations; and dealing with changes in a routine work setting. *See* 20 C.F.R. § 404.1522(b). The court perceives no error in the Report in this respect and, therefore, overrules this objection.

Finally, Russell objects to the magistrate judge's determination that substantial evidence supported the ALJ's decision to accord "less than persuasive" weight to the prior 2014 ALJ decision. (ECF Nos. 18 at 4; 14 at 14–15). As noted by the magistrate judge, the ALJ properly acknowledged her duty to consider the 2014 administrative decision pursuant to SSA Acquiescence Ruling 00-1(4), which the SSA issued "to explain the evidentiary weight the Commissioner would accord prior RFC determinations during subsequent disability applications." *Cuffee v. Berryhill*, 680 Fed. App'x 156, 159 (4th Cir. 2017). This ruling provides, in pertinent part, as follows:

> In determining the weight to be given such a prior finding, an adjudicator will consider such factors as: (1) whether the fact on which the prior finding was based is subject to change with the passage of time, such as a fact relating to the severity of a claimant's medical condition; (2) the likelihood of such a change, considering the length of time that has elapsed between the period previously adjudicated and the period being adjudicated in the subsequent claim; and (3) the extent that evidence not considered in the final decision on the prior claim provides a basis for making a different finding with respect to the period being adjudicated in the subsequent claim.

[Include proper citation to block quote here].

The ALJ considered the relevant factors and concluded that "[t]he findings made [in the 2014 decision] are not supported by the claimant's treatment notes from the current adjudicated period as the claimant's alleged impairments have changed considerably during the two years since [2014] decision and the limited record does not support finding medically determinable mental health impairments as found in [2014]." (ECF No. 8-1 at 29). Russell takes issue with the ALJ's

15

failure to explain how her impairments changed. (ECF No. 18 at 5). The court rejects this objection as well. Russell fails to point to anything in the treatment notes relevant to the one-day adjudication period in the instant case that reflect the medically determinable impairments *at issue in this case* were severe on December 31, 2016.

Accordingly, the court agrees with the Commissioner that Russell has not established any error with respect to the magistrate judge's or the ALJ's analysis and, therefore, overrules her objections (ECF No. 18).

### IV. Conclusion

Thus, after a careful and thorough review of the Report, the record, and the parties' filings, the court concurs with both the reasoning and the result reached by the magistrate judge in her Report and finds the ALJ applied the proper legal standards and made a determination that is supported by substantial evidence. Therefore, the court adopts the Report (ECF No. 14) in its entirety, incorporates the Report herein by reference, and **AFFIRMS** the decision of the Commissioner.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Anderson, South Carolina
September 27, 2021